**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**TRAVIS HILL**                                                                          **PLAINTIFF**

**VS.**                                   **CIVIL ACTION NO: 3:09CV308 - CWR - LRA**

**CHRISTOPHER EPPS, et. al.**                                     **DEFENDANTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

THIS CAUSE is before the undersigned United States Magistrate Judge for report and recommendation on Defendants' Motion for Summary Judgment [#29], filed July 12, 2011. The undersigned has considered the motion, the supporting memorandum [#31], Plaintiff's "Opposition to Summary Judgment" [#34] and the Affidavit of Dr. Gloria Perry, M.D., Exhibit A to Defendants' Motion [#29-1]. Also considered are the Plaintiff's sworn allegations regarding his claims made at the omnibus hearing conducted in this cause on September 14, 2009.

## SUMMARY JUDGMENT STANDARD

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings or discovery, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lynch Properties, Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Once the moving party has satisfied this burden, the non-moving party must go beyond the pleadings and, by its own evidence, whether by affidavits or otherwise, set forth specific facts showing a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431-32 (5th Cir. 1998).

## DISPUTED AND UNDISPUTED FACTS

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Plaintiff contended that he did not receive adequate medical care for his end-stage plasma cell multiple myeloma,

diagnosed in August 2008. Plaintiff was a convicted felon in the custody of the Mississippi Department of Corrections (MDOC) during the relevant period.

Plaintiff's medical records were introduced into evidence under seal on July 22, 2011, and Plaintiff made no objection to the accuracy of his records. The records confirm his diagnosis of plasma cell multiple myeloma and his treatment of radiation and chemotherapy beginning in August 2008. Medical records also confirm a stay of chemotherapy by the treating oncologist due to low blood count levels that could not support the therapy. Although the Plaintiff alleges that prison officials have chosen to deny treatment because of financial reasons [#1]-- there is no evidence in the record to support the claim other than Plaintiff's conclusory allegations.

Plaintiff first came under a physician's care in August 2008 because he had jumped off an upper bunk bed and injured his leg and back. He was prescribed medication for the pain, which did not subside, and he was subsequently sent back to the hospital for further testing. In mid-August 2008, Plaintiff underwent a battery of tests to include computed tomography (CT) scans and magnetic resonance imaging (MRI); these tests eventually revealed Plaintiff's current diagnosis of plasma cell multiple myeloma.

After receiving radiation therapy, Plaintiff began chemotherapy in September of 2008. He received chemotherapy on 09/16/08, 10/07/08, 10/28/08, 11/18/08, 12/16/08, and 01/06/09 at three-week intervals, according to Plaintiff's medical records. On 01/27/09, his treating physician stopped chemotherapy due to Plaintiff's low blood count. At a follow-up visit on 03/10/09, the treating physician determined that Plaintiff's blood count was still too low to sustain chemotherapy treatment. In August, Plaintiff was able to resume treatment and received treatment on 08/12/09 with continued treatment scheduled for 09/02/09, 09/23/09 and 10/14/09.

Plaintiff made sick call requests on 03/26/09, 04/06/09, 06/08/09, 07/20/09, and 09/17/09 to make complaint of side effects of his treatments, to include experiencing pain,

2

and requesting to boost his blood count via injection in order to resume chemotherapy treatments (06/08/09 sick call request). Instead, the medical records reflect that Plaintiff received chemotherapy beginning in December 2008 and that therapy was to be continuously administered intravenously if Plaintiff could sustain it. In January 2009, the oncologist determined that Plaintiff was unable to sustain treatment due to low blood counts. At a follow-up appointment in March 2009, the oncologist still deemed Plaintiff unable to sustain chemotherapy until Plaintiff's blood count was finally elevated enough in August 2009 to resume chemotherapy. Plaintiff's rest from chemotherapy took place between the end of January 2009 and August 2009. After chemotherapy was restarted in August 2009, Plaintiff received the prescribed treatment for his cancer about which he does not complain here.

Plaintiff does not contest the validity of the contents of his medical records, although he asserts that he was told that his chemotherapy was discontinued due to costs. He also contends that MDOC discontinued treatment for all cancer inmate patients indefinitely. As senior officials, Plaintiff charges that Defendants Commissioner Christopher Epps and Gloria Perry, M.D. ("Epps" and "Perry") are responsible for this "denial of medical attention" and thus are engaged in attempted murder. Plaintiff cannot identify the person who told him this, but he concedes that it was not these Defendants.

Other than his unsubstantiated conclusory allegations, Plaintiff has presented no evidence supporting his assertions. Plaintiff does not complain about his actual treatments but only the halting of said treatments; he admitted at the omnibus hearing that his chemotherapy treatments had restarted. He contends that Epps and Perry are responsible for the halting because they have the authority to handle all medical matters with regard to inmates.

Also considered by the Court is Dr. Perry's affidavit, dated July 8, 2011. According to her, neither she nor Commissioner Epps have any involvement in Plaintiff's day-to-day treatment; his oncologist determines Plaintiff's treatment protocol. The Office of Medical

3

Compliance has assisted in facilitating Plaintiff's offsite oncology treatment since 2008. Plaintiff has received chemotherapy (infusions with the medicine Zometa) every three weeks since the onset of his cancer. The only cessation was at the oncologist's orders because Plaintiff's bone marrow was not capable of maintaining acceptable blood counts; therapy was resumed at the oncologist's orders after his blood count improved. According to Dr. Perry, Plaintiff received the treatment recommended by his oncologist; neither she or other prison officials were involved in making that medical determination.

## ANALYSIS OF THE APPLICABLE LAW TO THE FACTS IN PLAINTIFF'S CASE

42 U.S.C. Section 1983 prohibits the deprivation of constitutional rights under color of state law. As the United States Supreme Court has stated, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment applies to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment, and it prohibits the infliction of cruel and unusual punishment for crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The amendment's protection extends to prohibit deprivations that are not specifically a part of a prison sentence, but are suffered as the result of imprisonment. *Id*. at 297, citing *Estelle v. Gamble*, 429 U.S. 97 (1976). The amendment requires prison officials to provide humane conditions of confinement, including adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

When a complaint involves conditions that are an element of confinement, as opposed to those that are a part of punishment, an inquiry must be made into the state of mind of the defendant prison officials. *Seiter*, 501 U.S. at 300-02. For such a claim to be viable, the official must exhibit "deliberate indifference" to the welfare of the inmate. *Id*. at 303. The elements of proof in a case involving conditions of confinement are twofold and include: (1) an objective component, under which the inmate must prove his exposure to a harm or injury

that violates contemporaneous standards of decency; and (2) a subjective component, under which the inmate or pretrial detainee must prove that the prison authorities' current conduct evidences a deliberate indifference to that exposure. *Helling*, 509 U.S. at 35-36; *Hare*, 135 F.3d 327. In other words, under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In defense, prison officials may show that they did not know of the indications of substantial danger and were, therefore, unaware of the danger, or that they knew the indications but believed that the risk involved was "insubstantial or nonexistent," or that they "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844-45.

Under the case law discussed above, the Defendants must have exposed the Plaintiff to a **substantial risk of serious harm** for liability to be found, according to the *Farmer* decision. Under the facts as alleged by the Plaintiff, and as evidenced through the medical records, the Plaintiff was never at risk for any serious harm. Plaintiff was treated after his cancer diagnosis by radiation therapy followed by chemotherapy. The chemotherapy was rested by his treating physician when his blood count levels fell to the point at which he could not sustain chemotherapy treatment. Plaintiff alleges that his treatment was halted due to financial capabilities of the prison. Instead, the records confirm that treatment was halted due to his own physical reasons by his treating physician, neither factor being influenced by either of the Defendants. The failure to continuously provide chemotherapy treatment to a prisoner against a treating physician's advice does not rise to a constitutional violation; no serious harm resulted.

Plaintiff cannot establish that prison officials were indifferent to his illness, as he was treated regularly as directed; in Plaintiff's opinion, his chemotherapy should not have been

rested.  Although Plaintiff may have suffered pain during the delayed period, the medical records do not indicate that Plaintiff was harmed by the delay.  Deliberate indifference to a prisoner's **serious** medical needs may constitute an actionable Eighth Amendment violation under §1983.  *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989).  These Defendants cannot be found to be "indifferent" because Plaintiff was and continues to be treated for his cancer via radiation and chemotherapy.  Further, Defendants' actions regarding Plaintiff's condition cannot be considered **serious and deliberate indifference** under the circumstances of this case, where no permanent injury occurred.  The MDOC acted reasonably by obtaining medical attention for all of Plaintiff's problems, including cancer.

Defendants also assert Qualified Immunity as a defense.  "The doctrine of Qualified Immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  For determination of Qualified Immunity, a two-prong test is used: whether a Plaintiff's constitutional right was violated by an official's conduct and whether that right was clearly established at the time of the violation; courts may rely on either prong in its analysis.  *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

As discussed above, Plaintiff has alleged no constitutional violation under applicable law because he was provided with regular medical care.  Plaintiff simply disagrees with the care that he received.  Accordingly, "there is no necessity for further inquiries concerning qualified immunity."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001). These Defendants are immune from this suit and should  be dismissed.

Plaintiff claims that Defendants, in their supervisory capacity, are responsible for their employees' actions.  As stated, Defendants were not involved in the treatment of

6

Plaintiff's medical condition. Under these circumstances, Plaintiff cannot sustain a claim of supervisory liability under section 1983, as there is no vicarious liability under section 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978). Fifth Circuit precedent requires either personal involvement by an individual Defendant in the alleged violation, or the enforcement of some policy or practice resulting in the constitutional deprivation. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). Neither can be shown in this case.

"The decision whether to provide additional treatment 'is a classic example of a matter for medical judgment'"and "[a] prisoner's disagreement with his medical treatment, absent exceptional circumstances" do not satisfy the deliberate indifference requirement. *Id*. (quoting *Estelle*, 429 U.S. at 107); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). This Court concludes that there is no genuine dispute as to these facts: Plaintiff's treating physician made the decision to halt chemotherapy due to his condition, and Defendants played no role in this medical decision. No proof that costs were a concern of these Defendants was presented by Plaintiff, other than by his unsubstantiated testimony that some unidentified persons told him that. This statement by unidentified persons could not support a finding of liability as to these Defendants, particularly in light of the information in the medical records showing regular treatment.

The undersigned finds that no genuine issue of material fact exists in this case. The medical care provided met constitutional muster, and no Defendant intentionally withheld proper medical care from the Plaintiff.

## IV.  Conclusion

For the above discussed reasons, it is the recommendation of the undersigned United States Magistrate Judge that the Defendants' Motion for Summary Judgment [#29] filed in the instant case be **granted**, that the complaint be dismissed with prejudice, and that Final Judgment in favor of Defendants be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009).

IT IS SO ORDERED, this the 12th day of January, 2012.


                                                S/ Linda R. Anderson
                                        UNITED STATES MAGISTRATE JUDGE